The first case this morning is Ibarra v. Lee, number 22-5094. Counsel, you may proceed. Yes. Thank you. Good morning to all of you. Dale DeLipo on behalf of the appellant. We think the main reason this case should be reversed is because the trial court did not assume any of the plaintiff's facts or take reasonable inferences from them as it is required to do and to some extent waived the evidence and just assumed all of the appellee's facts. And the court, this particular judge, did the same thing in the recent case of Wilkins v. City of Tulsa that Judges Matheson and Epple were a part of that panel. I went through the court's order and I noted what it listed as the uncontroverted facts were controverted by declaration, deposition testimony, photographs, and the declarations included the mother and sister and three experts. And you probably already know what I'm going to say, but for example, number 16, that Jorge was jumping up and down and had clenched fists, that's disputed. 17, that he was in a fighting stance, that's disputed. 19, that he was told he was under arrest for making threats, that's disputed. He agreed he was told he was under arrest, but never what for. 19, that he said, and excuse my language, that he's going to beat her ass and beat his ass and threaten to kill the officer, that's all disputed. On that fact, did they say that he didn't say it or that they didn't hear it? Well, they were right there. And I guess the reasonable inference of Judge Carson is he didn't say it. So what was their precise testimony on that? Well, he was upset. He did use profanity, Judge Carson, pointing at him and telling him to get out of his house, which we believe he had a right to do. If there was any consent, which we believe was disputed at a minimum, he had the right to revoke consent. Who had the authority? I mean, was it his—I've forgotten what the relationship was. The mother. The mother let them in. Was there—if you have one resident of the house that says come in and one resident that says no, stay out, who has the Trump vote on that? Well, first, Judge Edel, I think it should be noted that in the declaration of the mother, Isidro, she disputes that she gave him consent to enter. So that is a material factual dispute. But assuming for discussion purposes that she did give him consent, then we believe Orge, who is the owner of the home, has the right to revoke that consent. The mother was not an owner of the home? No. But did the officers know who was the owner of the home? I don't know if that's clear from the record, Judge Edel, but I do think it's important to note that there is a material factual dispute as to whether consent was given at all. And I think it's undisputed that Orge said to get out of the house. If I can just quickly continue with the disputed facts, it's disputed that he was ever lunging in the bedroom towards a nightstand or for a weapon. It's disputed that he ever struck the deputy. Now, this is critical, we believe, to the analysis. And this is disputed by deposition testimony, by declaration, by photos of the deputy showing no injury to him, by Dr. Amala's declaration, who he also reviewed medical records because the deputy was at least examined. So no punches, no strikes, no threat to kill, nobody about to lose consciousness, nobody blacking out. And it's disputed that he was standing over the deputy at the time of the shouts because you have a downward trajectory of the bullet. Counsel, could I just ask you a question about the declarations, particularly the ones from Ms. Mitchell and Ms. Martinez? Correct. Those were submitted, as I recall, with your opposition to summary judgment. That is correct, Your Honor. And they had already been deposed, so these are declarations post-deposition. Also correct. And were those declarations challenged by the defendants? No, they were not, Your Honor. And neither, quite frankly, the court never made a ruling on expert declarations, and we had three expert declarations as part of the record. So the big problem that we have here is that all of these material factual disputes, which we feel if you assume plaintiff's facts and take all reasonable inferences, the law is clearly established. The consent law is very clear. Absent edging circumstances and a warrant, you need consent to enter a home. Jorge, as Your Honors are aware, was 5'4", 117 pounds, sleeping in his own bed in his own house in his boxer shorts. When the officer came in and started yelling at him, and from our perspective, under our effects, was the total aggressor. Punching him, kneeling him, pelting him. Well, counsel, can we just back up a second? We talked a little bit about this consent argument. Did you make that argument in district court, though? Yes, I believe if you look at the MSJ opposition, and we cited in our reply the reference, I believe, and you look at the court's order, there was discussion about the entry and about consent. The one argument that was not specifically made, Judge Matheson, is the revocation of consent argument, which was made here in the first instance. In other words, whatever happened at the doorway, there's a dispute, but the argument that Jorge had the right. Now, if Your Honors feel that was forfeited in some way and it's plain error review on that issue, we still think under plain error review, it's clear that Jorge had the right to revoke consent. Well, where did you argue plain error in your briefing to us? I read the briefs in the last few days, and I believe it's there, but I'm almost positive that it's there, Your Honor, but I can't cite the exact page number right now. I apologize for that. But I recall seeing that, that if the court felt it was forfeited, then plain error review would apply, and even under that review, the law is clear. So from our perspective, if you assume plaintiff's facts, which the trial court for some reason didn't take any of, they took all the other side's facts and listed them as undisputed facts. We believe a jury has to decide these material factual disputes and also weigh the credibility of the involved officers. Can I ask you, this gets to a particular, but even assuming your version of the facts, wasn't Mr. Martinez resisting arrest? Didn't his movement from the hallway to the bedroom show that? And also, if he wasn't resisting, why could Deputy Lee only handcuff one of his wrists? I think that's a reasonable question. The problem, and again, all the questions are, and I thought about that because I think that was raised with Judge Matheson in the brief, but given the plaintiff said his facts, if someone's being repeatedly punched all over their body, including in the face and head, as Jorge was, by someone 220 pounds and over 6 feet tall, it's hard just to stay still and take those punches. So to the extent he was moving away, to the extent excessive force was being used against him or the arrest was unlawful, one could argue he had a right to resist to some extent the excessive force. So I think, yes, arguably he was at a minimum moving away from the force, and maybe that's a reason why there was only one handcuff, but from the plaintiff's perspective, given that under our facts, he never struck the officer, never threatened the officer. The officer was not blacking out. He was not standing over him. He never swung his handcuff at him in any way. Under our facts, we believe that there's evidence to support that the use of deadly force was excessive and unreasonable, and we tried to cite some of the cases. Huff v. Reeves, which talks about the law being purely established since 2016, Tenorio v. Pitzer, a 2015 Tenth Circuit case, Walker v. City of Orem, which I believe Judge Ebel authored. We also cited Zupel v. City and County of Denver, a 1993 case. And quite frankly, if you assume our facts, one could argue this falls within the obvious. So what was the testimony that he was being attacked and beaten before the first handcuff was placed on him? Meaning Jorge? Yes, but he's the only one who had a handcuff on him. Yes. So that essentially came from the mother and the sister by way of their deposition testimony and the declaration. You may recall that the sister was so appalled by seeing the deputy beating her brother up, she called 911 during the incident and told 911, essentially this officer is beating up my brother for no reason at all. Right, I'm asking about what the testimony said, about the timing of it, though. So the testimony in your position is that the deposition, the declaration said before he ever tried to put a cuff on him, he was beating him. Yes, so that testimony, I believe in the record, again assuming our facts and taking reasonable inferences, before we handcuffed him, he grabbed him, punched him, put him up against a wall and tackled him to the ground so there were blows in knees and elbows and then the handcuffing of the one cuff took place. What about the shooting? Yeah, let's talk just briefly about that and I'll try to save a few minutes. So now they're in the bedroom where the shooting took place. Jorge is, again, not verbally threatening him, not striking him, not swinging anything at him. He's laying on the ground immediately before the shooting on his back. Look, he's asking his mom to film this mom. Sadly, those were his last words. Film this mom. And his mom was trying to film him and Deputy Lee took out his gun and shot him. Now we believe that right in the split second before the shooting, a reasonable inference is that Jorge was laying on his back, started to get up in anticipation of being shot in a defensive position and that's why his back was not flat against the ground when he was shot. However, importantly, there's a downward trajectory of the bullet. It strikes the wall at 17 1⁄2 inches off the floor. The gun was 21 to 25 inches off the floor. There's a mistake in the record by the trial court and the appellee's brief. That estimate is not the exit one. Their expert said that is the level of the gun. So you have a downward trajectory going into the wall and we believe, Judge Ebel, that you would not have a downward trajectory going into the wall if Jorge was standing over the officer at the time of the shot as the officer contends. So we believe that shot was- No warning or anything like that. And no warning that shots were going to be fired. Quite frankly, it's a shocking case. If you take plaintiff's facts, it's really an egregious and shocking case and from our perspective, a terrible shooting and that's why in addition to the cases I cited, I think under Hope and Brousseau, this is the type of case where someone could argue this falls within the audience. Shooting a man 5'4", 117 pounds in his own home wearing boxer shorts under our facts, not threatening, not striking, not trying to strike the officer in any way and being shot without warning in this matter and right before his mother. So if possible, I'd like to save a little time. I talked longer than I wanted to. I have a habit of doing that. So is that okay if I save a little time? You've got one minute and 24 seconds. Not much time. Thank you very much. Thanks. Good morning, Your Honors. Thomas LeBlanc on behalf of the Appalachians, Cheyenne Lee and Rogers County. I would like to start with the shooting because the story you just heard is unsupported by any facts whatsoever. It's supported only by the testimony of Isidro Mitchell, which is unequivocally proven false by physical evidence, the laws of physics and math. The plaintiff's claim fundamentally in this case is that Mr. Martinez was lying perfectly still on his back on the floor with his hands by his side when Deputy Lee for no reason chose to execute him by shooting him in the chest lying flat on the ground. We know that could not have happened. We know that the bullet was found by the plaintiff in the wall 17 and a half inches from the floor. But it seems to me that that is a bit of a nuance as opposed to the big picture. I can't get over the fact that this is a summary judgment matter. If there are disputes, we don't decide what the facts are. We decide what evidence there is of a dispute in fact. And that's the critical thing for summary judgment. You may say that he's wrong and the jury may agree he's wrong, but you can't get a summary judgment if there is a version out there that is not consistent with your summary judgment ruling. I agree with that, Your Honor. If all we had was the competing testimony of a deputy and an eyewitness, summary judgment would be very difficult in that situation. But here, not unlike Scott v. Harris, where you actually have physical evidence that you can point to that undoubtedly refutes the story being told by the eyewitness, this court has no obligation, the trial court had no obligation, to simply accept a fictitious account of events without any sort of evidence. Well, the only physical evidence I know of is not a strong downward trajectory of the bullet. It seems to me that that fact is not essential to the claim. Your Honor, the downward trajectory of the bullet that is referred to would be— Was there any other physical evidence other than that one? You said if you've got strong physical evidence, usually you've got a video or you've got some physical impossibility. I don't see anything like that here. Well, what we have in terms of physical impossibility is if, as described, the plaintiff is laying flat on the ground— Well, maybe he wasn't. That doesn't excuse the officer's conduct. I mean, it's an important fact in the evidence, but it's not the critical fact of whether the officer was acting unconstitutional or not. Well, I think it is, Your Honor, because, again, the only testimony from the plaintiff is that he was lying on his back. Well, maybe that was right, maybe that was wrong, but whether he was or not, it doesn't seem to me to be the essential fact of whether this officer acted unconstitutionally. That's a cherry on top. It's not the core of the meal. Respectfully, I disagree, Your Honor. I mean, there has to be some— The evidence was the officer shot him. There was some testimony that he didn't give a warning. There was some testimony that the decedent didn't have a gun or a weapon or wasn't threatening him or anything else. There was also testimony that he was the owner of the house and revoked the consent to come in. On a summary judgment, I don't see how you can deny that there is some evidence that seems to be contrary to the summary judgment. With respect to the physical evidence, we know, for example, it's incorrect for the plaintiff to even allege that Mr. Martinez had no weapon. He has a handcuff on his wrist, a steel object, which even the plaintiff's expert acknowledged is a weapon in that setting. We know that to be true. We know that Officer Lee had a mark on his head indicating he had been hit by Mr. Martinez, had suffered blunt trauma. We know there was a fight. We know there was a struggle. We have photographic evidence of Mr. Martinez's position on the floor after the shooting. Well, counsel, counsel, how do you square that with the declarations? I mean, we have Ms. Mitchell saying that he, and I'm quoting, never punched Deputy Lee in the face or the head area or anywhere else at any time during the incident. Now, you may disagree with that, but it's there. We also know from Ms. Martinez's deposition testimony, she was not in the room or even in the house. This is Ms. Mitchell, not Ms. Martinez. Okay. Well, Ms. Mitchell also testified in her deposition that her son, Mr. Martinez, never struck the officer, right? And she testified in her deposition that the officer never struck Mr. Martinez, that no blows were exchanged. And she testified there was no fight. So we know her testimony is inaccurate, Your Honor. The court need not accept an after the fact— Wait, wait, wait. What about—I asked you about the declaration. Right, and the court need not, Franks v. Nemo, recite it in our favor. Well, but you never pressed that issue, and the court never decided the Franks argument. I think by inference— No, it never addressed the Franks argument. How can you infer that it did when it never said that? Well, because the court did not rely on or make reference to the declaration. Counsel, let me ask you this question. Didn't the district court copy, almost verbatim, the factual recitation in your motion for summary judgment? There is considerable similarity. I would say that there is. I ran a compare, and it was almost identical. Now, how is that viewing the facts in the light most favorable to the nonmoving party? Well, I believe what the court is looking for— I just—no. How does that view the facts in the light most favorable to the nonmoving party when they're using your facts? Well, because those facts that were set forth in our paper, Your Honor, were supported with admissible evidence. They may have been, but there were other facts. There was the deposition testimony. Are you saying that the court should ignore the declarations? Is that what you're saying now? With respect to the declarations, I think the court certainly has to look at the fact that they are coming entirely in response to the dispositive motion and that they, to the extent, contradict the deposition testimony, they can and should be disregarded, Your Honor. That is what Franks v. Nemo and other similar cases have told us. What about the expert reports? You asked to have them excluded. The court never did that. Could the court and could this court look at those? The court certainly could look at those. And could this court? We're on de novo review. I think this court could look at those. All right, and they were never excluded, correct? The motions in limine were not ruled off since the motion for— All right, so they're on the table for this court's consideration. Is that correct? They are on the record. Can we consider the experts' reports? Yes or no? Yes, Your Honor. I believe you could. But I believe those reports, when taken in the totality of the evidence presented, actually support the defendant's position in this case. For example, Dr. O'Malley, their pathology expert, makes no reference to the location of the bullet, offers no scientific explanation for how the bullet ends up— He did offer an opinion on the relative positions of Mr. Martinez and Deputy Lee. You know, it's interesting. I'm glad you brought that up because in that position, when I specifically pressed him on that and asked him to give me the relative position, the orientation of Mr. Martinez on the floor, he could not do it and would not do it, Your Honor. So, yes, he looked at the trajectory as it entered the body. In other words, the entrance wound was higher than the exit wound, and he characterized that appropriately as a downward trajectory in the body. He made no other effort to establish the location of the body. Your Honor, common sense. If it's a downward trajectory, if the person is standing, that tells you nothing. If he's lying flat on the ground, that tells you nothing. Well, but, counsel, I'm back to Judge Ebell's point. I understand your physical position argument, but there's more to excessive force than just the positions, correct? Yes, Your Honor. Doesn't Mr. Martinez need to present a threat to the deputy to justify the shooting? And there's no question that he did. Well, no, I'm asking you, isn't that a relevant question? Sure, the relevant question— And didn't the declarations—didn't Ms. Mitchell's declaration say that there was no threat, that Mr. Martinez wasn't—didn't punch him? There was no—in fact, at no point during the incident did he ever verbally threaten to harm Deputy Lee. Now, you may disagree with that, but it's there. Well, to Judge Carson's point, the fact that she never heard Mr. Martinez make a verbal threat to Officer Lee does not mean it didn't happen, Your Honor. Yeah, but isn't there—doesn't the reasonable inference go in the non-moving party's direction on summary judgment? Yes, Your Honor, the reasonable inference, but it has to be supported by admissible evidence. So, for example, with respect to the verbal threat, okay, if you assume there was no verbal threat, there's no question that by—in Maria Martinez's testimony, her brother came out of his room yelling, screaming, cursing, waving his arms, in her words, acting wild, in her words, acting crazy. But not—but not acting dangerously, not with a weapon in his hands. Not at that moment, that's true, Your Honor, and at that moment is when— And you have a right to be angry with police. I mean, you don't have to—but you have to—you can't strike them, you can't hit them, but again, I don't think that goes to the core of what we have to decide here. But I think that that's the beginning of what we have to decide, Your Honor, and so at that moment, when Mr. Martinez is behaving in that fashion, according to the plaintiffs' own witnesses, at that moment he is clearly obstructing Deputy Lee's efforts to serve this emergency protective order. At that point, any reasonable officer in his position has probable cause to make an arrest for a misdemeanor in his presence. Officer Lee attempted to do that and specifically said in its undisputed, you are under arrest, you are under arrest. When he attempted to execute that arrest, that's when Mr. Martinez resisted—now a second misdemeanor in Deputy Lee's presence—resisted arrest, actively attempting to get away, and there's no question that's the beginning of a struggle that took place on the floor just outside the bedroom, moved into the hallway, and then moved into a second bedroom. There is an active, ongoing fight between Deputy Lee and Mr. Martinez. But what is the size? Isn't there an enormous size difference between the two of them? Yes, Your Honor, but what evidence is there that Mr. Martinez was incapable of putting up one heck of a fight regardless of his size? I mean, the fact is one handcuff was put on Mr. Martinez and despite tremendous effort by Dr. Lee, I mean by Mr. Lee, Deputy Lee, even according to the mob, he was unable to get that second handcuff on Mr. Martinez. That is clear evidence of a significant struggle. Lieutenant Walker testified and there was photographic support for this. Deputy Lee clearly looked like he had, quote, been in a fight after the shooting was over. Disheveled uniform, torn name badge, torn off magazine clip, red marks on his head, neck, and face. There was a fight, Your Honor, and that is what led to—and this is where the physical evidence becomes crucial. The physical evidence, as set out by Matthew Hovell, clearly shows us at the moment the trigger was pulled, Mr. Martinez was on his feet in a leaning forward, crouched position, a position of advantage over Deputy Lee, who was on his knees. At that point, Mr. Martinez has a steel weapon capable of exerting tremendous injury. Any officer in Deputy Lee's position under the undisputed physical evidence would have been in reasonable fear for imminent serious bodily injury. That is the standard for the decision to use excessive force. Do you want to say anything about clearly established law? Yes, Your Honor. Thank you. This report did not address whether the law was clearly established, but obviously that is the second prong of the plaintiff's heavy burden at this stage. There is no case law provided by the plaintiff that establishes that any reasonable officer in Deputy Lee's position would have known that his conduct was violating Mr. Martinez's Fourth Amendment right. I would point, Your Honor, to a very recent decision, Lewis v. City of Edmond, 48F4-1193, a 2022 decision, specifically pages 1197 through 1199. I don't have much time, so I won't belabor the point, but this court in that decision very clearly laid out the specificity of the precedent that they have to provide and how important that is, specifically in the excessive force case where we know that officers have to make very rapid decisions, split-second decisions, often under the threat of serious bodily injury. So the law is not clearly established as to the use of force. The law is also not clearly established as to the use – I mean, as to the arrest. Plaintiff argues a probable cause was missing. Clearly, there was a probable cause. Plaintiff argues that there was no consent. We point out in our brief, Your Honor, Ms. Mitchell testified in her deposition. She opened the wood door. She opened the glass door. That was her first contact with Deputy Lee. The wood door remained open. Deputy Lee went to his car and came back. Ms. Mitchell testified she held the door open, the glass door. When Lee approached, he grabbed the handle, which you have to do, and opened the door himself, outward, which you have to do to enter the home. And she was asked directly, and did you at that point step aside and allow him in? And her answer was yes. We also cite – Counsel, you're over time. My apologies, Your Honor. No, I just noticed it myself. But if you have anything you want to wrap up, that's fine, but otherwise – I think it's all covered in our brief. The only last thing I would point out to Your Honor is the actual emergency protective order, which is in Appellant's Appendix No. 1. Clearly, the judge in Tilghman County made a finding that there was a concern for these children and that they needed to be protected. The idea that Deputy Lee could just simply drop off the hold and leave – Thank you. Thank you, Counsel. Thank you. Thank you. I'll be very brief. I know you have a full calendar and I don't have much time. Just very quickly, on the consent issue, Ms. Mitchell clearly says in her declaration she did not give consent for him to enter. He didn't ask to enter. She didn't say you can enter. He merely opened the door the rest of the way and walked right in. But she didn't resist it. She didn't, but she's an elderly woman. I know. We have facts on situations like that, other cases. Obviously, the court's inquiries are on point because on summary judgment, there's just all these material factual disputes that have to be decided by a jury. What about the loose handcuff as a weapon argument? Well, what's really important is the context under which this occurred under the plaintiff's facts. He never struck or attempted to strike an officer at any time before the handcuff was put on or after. Well, apparently the officer had evidence of having been struck. Well, that's also disputed because in his original statement he never said that, which we cite that he saw the handcuff. He was concerned about it, but he never said he was struck by it. He never said that Jorge swung at Adam ever in his entire original statement, which we pointed out. So there's another factual dispute. And as far as the clearly established law, for the less lethal force, we believe cases like Casey and McWilliams established the law. For the lethal force, as I already said, cases like Huffey, Reeves, Tenorio, and Walker, both knife-cut cases with someone approaching the officer but not taking a stabbing or slicing or aggressive motion. This is just a handcuff on a wrist. So I would suggest Huff, Tenorio, Walker, and Zuccio, which is a 1993 case, all would put an officer on notice that you can't shoot and kill someone in their own home if they're not fighting you or trying to strike you or attack you in any way. And I also think this is one of those rare cases that falls within the obvious. Falls within the what? Within the obvious. So the Supreme Court has said, you don't need a case on all fours. The facts are going to be different. But certain cases are so obvious, if you accept certain facts to be true, that the excessive force, especially deadly force, we don't need a case. I think we have the cases, but I think it falls within the obvious, and I see them over time. So it's been a pleasure and honor being here and meeting all of you. Thank you very much. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted and counsel are excused. Thank you.